Messrs. Haggin and Crittenden, counsel for the appellee, presented to the court, a petition for a re-hearing.
The object of this petition is not to controvert the general doctrines established by the very learned and, able opinion delivered by the court in this cause, but to suggest, as a ground for further consideration, some matters which, amidst the variety of questions presented by the record, seem to have escaped the attention of the court, and which the counsel for Ormsby believe will have a material and decisive influence in the issue, pf his cause.
Our object shall be rather to suggest than to dis7 cuss; trusting more to the reflections of the court, than to our own arguments.
Petition for a re-hearing.
Ormsby, as a subsequent purchaser, attempts to impeach and invalidate a previous mortgage, executed by Beall to Breckenridge, in the year 1801, alleging the insanity of Beall, at the date of that mortgage. Upon this aspect of the cause, the court has decided, that the deed of an insane person is not void, but only voidable; and that a subsequent purchaser, standing in the attitude of Ormsby, has á right tp impeach and avoid it. But that, in this case, if Beall was insane at the date of that mortgage, (a question, on which nq opinion is given,) yet, that it is confirmed and naadq unavoidable by the recitals of it, in a subsequent deed of mortgage, to secure other debts, made by Beall tq Breckenridge, in the year 1802; at a time, when, as the court say, there is no allegation of his insanity. And upon this part of the case, the decision of this pourt has been made to turn against Ormsby, upon the supposed confirmation pf the mortgage of 1801, by the mortgage of 1802. If the facts upon which this decision is predicated, had been properly alleged and proved, the correctness of the decision would probably have been unquestionable. But it is respectfully suggested and insisted, that the very fact upon which the decision has been made to turn, is not allegedm the pleadings of the parties, even if it can be considered as proved. ■ The ground relied upon by Ormsby, for relief, in this particular, is the insanity of Beall, at the date of the mortgage of 1801. This is directly alleged in his bill, and is directly denied by the answers of the defendants, who insist that he was sane at that time. Thus, then, the issue is fairly and distinctly made upon the sanity or insanity of Beall, át the date of that mortgage. Upon that issue, the parties have, on both sides, prepared themselves with testimony, and on that issue, the parties have mutually staked the cause. There is not in the bill of Ormsby, nor in the answer of the defendants to it, any allegation of any subsequent ratification or confirmation of the mortgage of 1801; nor is there in those answers, the slightest allusion to the deed of 1802, now relied on as amounting to such a confirmation. If the deed of 1802, or any other act of Beall,had been intended tobe urged, and relied on as a confirmation, the defendants-ought to have explicitly alleged a confirmation, and thereby afforded tp Ormsby *262 the opportunity of investigating and repelling such a defence. This they have not done, but turning aside from the issue taken upon the insanity of Beall, at the date of the mortgage of 1801, they attempt, for the first time in this court, to surprise Ormsby by a new and different defence, of \yhich they bad given no warning in their answers.
Petition for a re-hearing.
If the deed of 1802, had been alleged, and’the defendants in their pleadings, had insisted upon it, as a confirmation of the former mortgage, this court cannot know, or anticipate, but that its-effect on this case, might have been successfully obviated, and the deed itself, shown to have been void or inoperative. But admitting the deed to be operative, and to be proof enough of a confirmation of the previous mortgage, ought not the defendants to have alleged a subsequent confirmation by Beall, in order to render that pi oof admissible or availing?
It is a settled maxim, that the allegata and probata must agree. And our own court of appeals has said, that it was just as improper to permit a party to recover upon a case proved but not alleged, as upon a case alleged but not proved. The same principle applies to defendants, and equally requires the agreement of their allegata and probata, to sustain a defence. It is altogether unnecessary to give illustrations of this doctrine, or to make a parade of authorities'in support of it. It is no where better known or established, than in this cqurt. And even the uniform current of authorities, upon which it rests, will not more certainly secure for it, the sanction of your honors, than will Its own intrinsic propriety and justice. "
The deed of 1802, no.otherwise appears in this cause, than as part of the record of the former suit in chancery, brought by Breckenridge’s administrators, in the Fayette circuit court, and which record is referred to by both complainant and defendants in this suit. But by neither, is there any reference made to that deed, for any purpose. Nor is the reference to the record of that suit, made for the purpose of raising or affecting any question touching a ratification or confirmation of the mortgage of 1801. It is referred to by Prmsby, not to increase its effect upon hipa, or to ac *263 4¡uiesce in, or submit to it, but to show the correctness of his allegation, that the decree pronounced in it, was a mere nullity, by reason of the irregularity of the procedings on which it is founded. It is referred to by the defendants, for the supposed conclusive effect of its decree., upon some of the matters of equity, alleged by Ormsby.
^heailng!,1- &
But it is considered as Very certain, that the reference which is made to that record, cannot be regarded as equivalent to an allegation of the confirmation óf the mortgage of 1801. By no magic or conjuration can such an allegation be considered as implied in such a reference;, and if,- by any strained construction,' it might, the court would not allow such obscure and occult implications, to supply the place of those plain and direct allegations, by which parties litigant ought to warn each other of their several matters of complaint and defence.-
In the suit in Fayette, no question was made about the insanity or sanity of Beall; about the validity of the mortgage on that ground, or about subsequent ra-tification. As to all these matters, that case was totally silent; Ormsby was no party to it; Ormsby then, cannot be affected by the decree or evidence in that cause, so far as it relates to the issue formed in this, as to the insanity, &c. of Beall. But, at any rate, the' record referred to, can only operate as evidence, on the issue alluded to, and be available so far, and so far only, as there are allegations for it to agree with. And we repeat, that there is no allegation by the defendants that the mortgage of 1801, was ever thereafter ratified or confirmed by Beall, and consequently that all. evidence to thát effect, must be unavailing; and the more especially if that evidence be of a character fa deed, for instance, as it is here,) which, by the rules of pleading, in law and equity, ought to be specially alleged*1
If this view be correct, and the counsel of Ormsby has great confidence in it, it must exclude all considefation of any subsequent confirmation of the mortgage of 1801, and must leave the validity of that mortgage' to depend and be decided exclusively upon the ground' of the sanity or insanity of Beall, at its date. And' ftpon that question, not yet decided by the court, the' *264 most entire confidence is felt, that your honors will be of opinion that the insanity of Beall is firmly estab4 lished; and that on that side, there is a decided preponderance in the number of witnesses, and in the weight and intelligence of their testimony; and consequently, that the mortgage ought tobe declared void.
Petition for a re-hearipg.
If, however, there should be doubt that Beall was utterly incapable of rational exercise, at the daté of the mortgage; or if it should be held, still, that by some technical rule the latter deed must enure a confirmation, yet because of the extremé imbecility of intellect, on the part of Beall, and the unfairness in obtaining the mortgage,by Breckenridge, the deed should be canceled. Breckenridge had no just or plausible pretext for demanding this mortgage. , On the first of March, 1798, Breckenridge sold to Beall and Nicholas, his interest in th'e Slate furnace and the contiguous lands, without responsibility as to the title* Beall was to let Breckenridge have.a tract of ,1000 acres on Bear Grass, and 600 acres on Órennons Lick creek, purchased from Samuel Beall. Breckenridge was to obtain the title from Sarn’l. Beall’s representatives, for which, in the words of the agreement, “Walter Beall will not be answerable in any manner whatever, except that he will possess Breckenridge with an agreement entered into between him and Samuel Beall, whereby the said Breckenridge, in casé of deficiency of title, may avail ■himself of all advantages by said agreement.” Breckenridge afterwards, received the promised writing on Sam’l. Beall, gave his receipt accordingly, and in truth obtained the patent in his own name. Walter Beall then had, in every thing, fulfilled his covenant with Breckenridge, and stood absolved from all diability to him. Yet, át a period when all his neighbors and friends look upon him as laboring under the heaviest affliction, the utter loss of reason,- and nope could fail to observe considerable derangement, this mortgage was obtained to secure the payment of £1000 in land, the mortgagee executing a bond for the conveyance of the 600 acres of land on Drennons Lick. None can doubt of the consideration; and as little cause remains to question, that it was entirely the art of that mortgagee. Hów did it happen that the parties met at Bardstown? that this transaction, now fairly and finally *265 cióseá, should again be opened; that Beall should become the purchaser of the six hundred acres of land, and at the round and enormous sum of £l0'00; that he should execute a mortgage to secure the price before he received a deed, and employ á lawyer; at the same time, by bond, as a mere courtesy, to investigate the title to this newly acquired estate? What participation had Walter Beali in this contract; at a time when he did not associate with, or recognize a friend, himself; but the subject of their sympathy? When, in the language of some of the witnesses, he was incapable of settling the account with his butcher. But the right of Ormsby to impugn this deed is denied. Surely this is without authority. He was the innocent and bona fide purchaser and improver of the lot, which would be incumbered by this fraudulent instrument. If both the parties to the deed had contemplated a dishonest purpose, the cases are numerous to show that such a purchaser could avoid it in chancery. And with equal propriety may redress be sought against the one; whose contrivance would prejudice; The opinion de-. livered shows, that at law, this is often the privilege of privies. In chancery, more confidently would it be expected. .Were it an absolute deed, fraud would annul it. It is but & mortgage, a. charge upon the estate, which is well subject to subsequent mortgage of sale, and to redeem agáinst which, is e.véry days practice, upon the application of privies. The cognizance of the court once attaching, its scrutiny must not stop.
Petition for a re-hearing.
Touching the question, whether this deed of mortgage is void, of voidable, we have expressed our apprehensions, and indeed it would seem presumptuous in counsel, to hope to change an opinion formed upon deliberation; arid investigation', so profound as the present. Yet they Would be permitted to suggest; that they have long looked upon the conveyance by livery of seisin; accompanied with a deed of feoffment, declarative of the intent, as the most solemn and conclusive act in law, of which parties to a contract, were capable in the country. Therefore, that conveyance should stand, notwithstanding most disabilities, until deliberately avoided. All other conveyances by infants, &c".;were void, and such they think, is the receiv *266 ed opinion of the profession generally. It is verf probably, the misfortune of the counsel, that they are' yet unable to understand the rule given by Perkins on this subject, as the court expounds it. That author,, certainly intended to discriminate,, between deeds which took effect, by delivery of the hand, and those which took effect by the delivery of the deed. The former he pronounces voidable only; the latter void. The deed of feoffment,• does not necessarily, nor did it originally contaip a grantingclau.se. Its province was to perpetuate evidence of the intent of the conveyance, the title passed by livery, or delivery of the hand. But the deed of lease and release, took effect from the dé-1 livery, by delivery df the deeds. Therefore, that was once the ¡host ordinary mode of conveyance. But under the operation of our statute, the'deed of bargain and sale superseded as a conveyance, that of lease and' s'elease, and indeed all others, Perkins speaks of the common law rule. He makes a distinction between a delivery of the hand and of the deed; that he says, is the test by which the effect of the conveyance is to be determined. And yet the opinion says, that proves, that all deeds which take effect h'y delivery of the deed are voidable only. If Perkins meant deed and hand as synonymous, the conclusion of the court is right; if he' did not, then the contrary inference, it would seem,were inevitable. If such was the intention of Perkins, his labor for all practicable purposes was vain. For' he makes a distinction without a difference and at last leaves us without a rule. And in this condition lord Mansfield found himself. And he was consequently reduced to the necessity of adopting another rule, to ascertain what acts of an infant were void, and what' only voidable. If the' infants' contracts, are to his benefit, they are only voidable, if they are to his prejudice they are void. And here full scope is given to our benevolence. But we are without a guide. Now con-' cerning the handcuff and the shield,-and the policy of infants to trade and speculate, binding others, themselves free, &c. It had seemed to us, that the law did not will, or expect, that infants should contract,because they were supposed to lack discretion. Therefore their contracts are generally denounced. They are not bound, But as they must liye,- and receive zn *267 atruction, &c., and that they may labour under no disadvantages in their contracts, on those subjects, they are at liberty, thus far to bind themselves. So far the law deemed it, to comport with their interest, or comfort, they were placed upon an equality with the adult. But where it is deemed inexpedient, that they should act, the law denounces; mostly, we acknowledge, to the prejudice of the adult, but to suppress the practice. And we should have apprehended, that any facilities or encouragement to the infant, to speculate upon the means of others, reserving to himself the liberty of rendering an equivalent at his own good pleasure, upon the attainment of full age, comported neither with the justice, the policy or the morality of our institutions; and was not “as it should be.” We have never investigated the question, that we might negative the supposed analogies, between lunacy, and infancy in law; although we are very conscious of a diversity in many things. We had confidently relied, that were this a case of infancy, the mortgage would be held void; and now tested by the rule given by Mansfield, we would say that a mortgage upon his land, even to secure payment for necessaries by an infant, is void. By every test, the infant has no power, to mortgage his land.
Petition for a re-hearing.
Petition tor a re'heanriS-
Petition overruled.